Of Counsel:
RONALD K. KOTOSHIRODO
Attorney at Law * A Law Corporation

RONALD K. KOTOSHIRODO
1136 Union Mall, Suite 305
Honolulu, Hawaii 96813
Telephone: (808) 545-7700
Facsimile: (808) 545-7100
rkotoshirodo@hawaii.rr.com

Attorney for Trustee Dane S. Field

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| In re: | ) | Bankruptcy No. 13-00566-RJF |
| | ) | (Chapter 7) |
| ANN GRACE MORANO, | ) | |
| | ) | |
| Debtor. | ) | |
| _____ | ) | Judge: Honorable Robert J. Faris |

### ORDER GRANTING MOTION FOR AUTHORITY TO SELL REAL PROPERTY FREE AND CLEAR OF LIENS, PAY CLOSING COSTS, AND DISBURSE FUNDS ON DEBTOR'S EXEMPTION CLAIM; EXHIBIT "A"

The Trustee's Motion for Authority to Sell Real Property Free and

Clear of Liens, Pay Closing Costs, and Disburse Funds on Debtor's Exemption

Claim, dated July 9, 2013 [Dkt.#19], having been reviewed by the Court together

with the Declaration and Request for Entry of Order by Trustee's counsel filed

herein on July 25, 2013 [Dkt.#30], and the records and files in the case, and the

Court having found that no objection was filed and served in a timely manner,

IT IS HEREBY ORDERED that:

A.  The Trustee's Motion for Authority to Sell Real Property Free and Clear of Liens, Pay Closing Costs, and Disburse Funds on Debtor's Exemption Claim, dated July 9, 2013 [Dkt.#19] is GRANTED.

B.  The Trustee is authorized to sell free and clear of liens all of the estate's interest in the real property situated at 95-226 Kaopua Loop, Mililani, Hawaii 96789, TMK: (1) 9-5-022-091 (the "Property") pursuant to the terms set forth in the Counteroffer and Purchase Contract, copies of which are attached hereto as Exhibit "A," for the price of $560,000.

C.  The trustee is further authorized to (a) Pay in full the sums due to U.S. Bank National Association and USAA Federal Savings Bank as the holders of mortgages on the Property (b) a commission of five percent (5%) of the gross sales price to the estate's realtor, KU Realty, LLC, and cooperating broker, Island Style Realty, Inc.; and (c) the estate's share of the escrow closing costs for the sale.

D.  The trustee is further authorized to disburse the sum of $17,325 to the debtor relative to her exemption claim as the Property.

E.  This Order shall be binding upon and inure to the benefit of the Trustee, Buyers, and their respective assigns.

U.S. Bankruptcy Court - Hawaii   #13-00566   Dkt # 31   Filed 07/29/13   Page 2 of 23

F.  This Order shall (a) be effective, binding and enforceable immediately upon entry, and (b) not be stayed pursuant to Rule 6004(h) of the Federal Rules of Bankruptcy Procedure.

G.  This Court retains jurisdiction (a) to interpret, enforce and implement the terms and provisions of this Order, and the agreements executed in connection therewith, and (b) to resolve any disputes controversies or claims arising out of or relating to the Sale.

*/s/ Robert J. Faris*
**United States Bankruptcy Judge**
Dated: July 29, 2013

APPROVED AS TO FORM

/s/ Karyn A. Doi_____
Attorney for Secured Creditor
U.S. Bank National Association

_____
In re ANN GRACE MORANO; Bk. No. 13-00566-RJF; ORDER GRANTING
MOTION FOR AUTHORITY TO SELL REAL PROPERTY FREE AND
CLEAR OF LIENS, PAY CLOSING COSTS, AND DISBURSE FUNDS ON
DEBTOR'S EXEMPTION CLAIM

3

# EXHIBIT "A"

DocuSign Envelope ID: 6741E570-8676-49EF-BC1F-20076D7EEB54



# COUNTER OFFER
## Hawaii Association of REALTORS® Standard Form
### Revised 7/12 (NC) For Release 5/13



**COPYRIGHT AND TRADEMARK NOTICE:** This copyrighted Hawaii Association of REALTORS® Standard Form is licensed for use by the entire real estate industry on condition that there shall be no alteration of the printed portions, pagination, or paragraph numbers or breaks. The use of this form is not intended to identify the real estate licensee as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by real estate licensees who are members of the National Association of REALTORS® and who subscribe to its Code of Ethics.

Reviewed by: **Keahi D. Pelayo** _____ **KU Realty, LLC**
Name of Principal Broker/Broker-in-Charge          Signature                          Brokerage Firm

Counter Offer Reference Date: **6/27/2013** _____ Submitted by: [    ] Buyer ☒ Seller

Purchase Contract Reference Date: **6/26/2103**

Seller's Name: **Dane Field, Trustee**

Buyer's Name: **Benjamin and Jennifer Nitta**

Property Reference or Address: **95-226 Kaopua Loop, Mililani, HI 96789** ("Property")

Tax Map Key: Div. **1** /Zone **9** /Sec. **5** /Plat **022** /Parcel **091** /CPR **0000** (if applicable).

This Counter Offer cancels and supersedes any and all prior Counter Offers. All previous Counter Offers that have not been fully executed are null and void. All terms and conditions from any prior Counter Offers that are to be retained must be restated in this Counter Offer.

**INSTRUCTIONS:**
1. To Accept this Counter Offer: Complete the boxed section entitled "Acceptance of Counter Offer".
2. To Make a NEW Counter Offer: Complete a new Counter Offer form with a new Counter Offer Reference Date.
3. Alternatively, Buyer may submit a new Purchase Contract.

**FILL IN ALL CHECK BOXES.** Write "NC" if no change and "X" if there is a change. In the blanks provided, clearly identify the specific change(s), deletion(s) or addition(s) which comprise the terms of this Counter Offer.

[NC]    SECTION A: AGENCY DISCLOSURE **no change**

[NC]    SECTION B: INITIAL EARNEST MONEY DEPOSIT RECEIPT **NC**

[XX]    SECTION C: ADDENDA (add or delete) **1. Delete the Distressed Property Addendum.**
       **2. Bankruptcy Counter Offer Addendum is attached.**

### SECTION D: OFFER TO BUY AND PURCHASE PRICE

[XX]    D-2   Purchase Price. The Purchase Price for the Property in U.S. Dollars shall be paid as follows:

$    **1,000**   Initial earnest money deposit from Paragraph B-1

$    **1,500**   Additional deposit, if any, paid into Escrow on or before **within 11 days of acceptance**

$ _____ Balance of down payment (or balance of purchase price if all cash) paid into Escrow before closing

$    **2,500**   TOTAL CASH FUNDS FROM BUYER (exclusive of closing costs)

$    **560,000**   By way of **a new first VA mortgage at prevailing rates and terms.**

$ **(2,500.00)**   Note: **Buyer's $2500 earnest money deposit shall be returned to buyer in not needed for closing costs.**

$ **560,000.00**

$    **562,500**   TOTAL PURCHASE PRICE

**Failure by Buyer to make any of the scheduled deposits as required under Paragraph D-2 above shall constitute a default, and Seller may elect to terminate the Purchase Contract pursuant to Paragraph O-1.**

_____ 6/28/2013             _____ 6/28/2013
**BUYER'S INITIALS & DATE**     Page 1 of 2     **SELLER'S INITIALS & DATE**

©Hawaii Association of REALTORS®
Counter Offer
RR204 Rev. 7/12

U.S. Bankruptcy Court - Hawaii   #13-00566   Dkt # 31   Filed 07/29/13   Page 5 of 23

DocuSign Envelope ID: 50677BBC-06AC-4E97-AAAD-7BFF0D1288C3

[XX ]   **The following Sections of the Purchase Contract (E to S) and/or terms and conditions of any Addenda, are amended as follows.**
        **Please reference the appropriate Section, Paragraph, Subparagraph, or Addenda.**
        1. F-2  Delete: 45 days from acceptance, and add; see Bankruptcy Counter Offer Addendum.
        2. F-5  Delete: any other, and add; any other applicable fees.
        3. Delete I-1, I-2, I-3, I-4, I-5 and I-6.
        4. Delete J-8 and J-9.
        5. Regarding the termite treatment referenced in L-2, should the termite inspection report
        recommend treatment, said treatment shall be a buyer cost and, should buyer close this sale, seller
        shall credit buyer up to $1500 toward reimbursement of the recommended treatement.
        6. L-2  Delete: order after NOV, and add; 10 days prior to the close of escrow.
        7. L-2  Delete: $450.00, and add; actual cost.
        8. Delete O-4 and O-5.

**THIS COUNTER OFFER CANCELS AND SUPERSEDES ANY AND ALL PRIOR COUNTER OFFERS TO THE REFERENCED PURCHASE CONTRACT.**

The undersigned agree to sell/buy the above described Property on the terms and conditions set forth in the Purchase Contract, as amended by this Counter Offer and acknowledge receipt of a copy of this Counter Offer. This Counter Offer can be withdrawn at any time prior to delivery of a written acceptance to the undersigned's Brokerage Firm.

EXPIRATION: This Counter Offer shall expire at  6:00    [   ] AM/[X] PM on  Sunday, June 30, 2013    .

DocuSigned by:
_Dane Field, Trustee_                        6/28/2013
Signature of Party *Submitting* Counter Offer            Signature of Party *Submitting* Counter Offer
[   ] Buyer or [X] Seller                              [   ] Buyer or [   ] Seller

Title_____            Title_____

Date:_____,_____ [   ] AM/[   ] PM.

ACCEPTANCE OF COUNTER OFFER:  I/We accept this Counter Offer and agree to sell/buy the Property on the terms and conditions in the Purchase Contract, as modified by this Counter Offer, and acknowledge receipt of a copy of this Counter Offer.

Acceptance Date:      6/28/2013                      ._____ [   ] AM/[   ] PM.
DocuSigned by:                                        DocuSigned by:
_____                           _Jennifer Hisako Kim Nitta_
Signature of Party *Accepting* Counter Offer            Signature of Party *Accepting* Counter Offer
[   ] Buyer or [   ] Seller                            [   ] Buyer or [   ] Seller

NOTE: THERE IS NO WARRANTY ON PLAIN LANGUAGE. An effort has been made to put this Agreement into plain language. But there is no promise that it is in plain language. In legal terms, THERE IS NO WARRANTY, EXPRESSED OR IMPLIED, THAT THIS AGREEMENT COMPLIES WITH CHAPTER 487A OF THE HAWAII REVISED STATUTES, AS AMENDED. This means that the Hawaii Association of REALTORS® is not liable to any Buyer, Seller, or other person who uses this form for any damages or penalty because of any violation of Chapter 487A. People are cautioned to see their own attorneys about Chapter 487A (and other laws that may apply)

---

©Hawaii Association of REALTORS®            **Page 2 of 2**            RR204 Rev. 7/12 (NC) For Release 5/13

Company: KU Realty, LLC                                      S/N:  205488
Provided by: Keahi D. Pelayo                    Printed using Software from Professional Computer Forms Co. v. 5/13

DocuSign Envelope ID: 50677BBC-06AC-4E97-AAAD-7BFF0D1288C3

# Bankruptcy Addendum

ADDENDUM #1

Property:  95-226 Kaopua Loop, Mililani, Hawaii 96789

The parties hereby agree that the following provisions shall be deemed to be part of the Purchase Contract to which this addendum is attached.   These provisions shall supersede any provision contained in the Purchase Contract to the contrary.

Buyer, Seller, and realtors involved in this transaction, acknowledge that the Property is a Bankruptcy property and is being sold subject to the following conditions:

Buyer understands that the sale of the property is subject to United States Bankruptcy Court's approval, and the Agreement shall not be binding upon Seller unless and until it is approved by the Bankruptcy Court.

Closing shall be on the fifteenth calendar day after entry of the Bankruptcy Court's Order approving the sale, subject to no appeal, no tolling motion having been filed, or the Closing Date or such date the Seller is able to deliver possession of the premises, whichever is later.

Notwithstanding anything contained herein to the contrary, Property is being sold "AS IS, WHERE IS, AND WITH ALL FAULTS".  Except for the limited warranties of title described below, Seller makes no representations or warranties, either express of implied, with respect to any matter relating to the subject property.  THERE SHALL BE NO EXPRESS WARRANTY, NO WARRANTY OF MERCHANTABILITY, NO WARRANTY OF FITNESS FOR ANY PARTICULAR PURPOSE AND NO IMPLIED OR STATUTORY WARRANTY WHATSOEVER WITH RESPECT TO THE SUBJECT PROPERTY, ANY PERSONAL PROPERTY, OR ANY FIXTURE.

Buyer understands and agrees that the property shall be conveyed to Buyer by way of a trustee's quitclaim deed.  Buyer's obligation to purchase is subject to the condition that Seller shall obtain an order of the Bankruptcy Court authorizing Seller to sell the property to Buyer free and clear of all liens and encumbrances to the extent permitted by the United States Bankruptcy Code §363.

Buyer's deposit, subsequent to receipt of written loan approval, shall be forfeited in the event Buyer fails to timely complete the purchase as herein provided.

All disputes shall be adjudicated by and in the United States Bankruptcy Court for the District of Hawaii.

Seller is executing this document in his capacity as a trustee of the bankruptcy estate, in *In re Ann Grace Morano*; Bk. No. 13-00566 filed in the United States Bankruptcy Court for the District of Hawaii, and not individually.

6/28/2013

**Buyer's Signature and Date**

6/28/2013

*Jennifer Hisako Kim Nitta*

**Buyer's Signature and Date**

6/28/2013

*Dane Field, Trustee*

**Signature and Date**

Seller:  Dane S. Field, Trustee for the bankruptcy estate

- Page 2 of 2-

DocuSign Envelope ID: 50677BBC-06AC-4E97-AAAD-7BFF0D1288C3



# PURCHASE CONTRACT
## Hawaii Association of REALTORS® Standard Form
### Revised 3/12 (NC) For Release 5/13



**COPYRIGHT AND TRADEMARK NOTICE:** This copyrighted Hawaii Association of REALTORS® Standard Form is licensed for use by the entire real estate industry on condition that there shall be no alteration of the printed portions, pagination, or paragraph numbers or breaks. The use of this form is not intended to identify the real estate licensee as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by real estate licensees who are members of the National Association of REALTORS® and who subscribe to its Code of Ethics.

**NAR CODE OF ETHICS:** Buyer and Seller are aware that the National Association of REALTORS® holds its members accountable for their actions through a strict Professional Code of Ethics, which includes a grievance system to address complaints. Non-members are not held to the same standards as members, nor are they required to participate in the grievance system.

Reviewed by: **Joleen Dias, BIC** _____ _____ **Island Style realty**
         Name of Principal Broker/Broker-in-Charge       Signature         **Inc**
                                                          Brokerage Firm

Reference Date: **June 26, 2013**

Property Reference or Address: **95-226 Kaopua Lp, Mililani, HI 96789**

Tax Map Key: Div. __**1**__ /Zone __**9**__ /Sec. __**5**__ /Plat __**022**__ /Parcel __**091**__ /CPR __**0000**__ (if applicable).

**THIS PURCHASE CONTRACT BECOMES A LEGALLY BINDING CONTRACT FOR THE PURCHASE OF REAL ESTATE UPON EXECUTION BY THE PARTIES. READ IT CAREFULLY. HANDWRITTEN OR TYPED PROVISIONS IN THIS PURCHASE CONTRACT SHALL SUPERSEDE ANY PRINTED PROVISIONS IF THERE IS A CONFLICT. FILL IN ALL BLANKS. PARAGRAPHS PRECEDED BY CHECK-OFF BOXES ARE OPTIONAL AND MUST BE CHECKED TO BE MADE A PART OF THIS PURCHASE CONTRACT. WRITE "NA" IF NOT APPLICABLE.**

## SECTION A: AGENCY DISCLOSURE

A-1 **Agency.** Buyer and/or Seller in a real estate transaction in Hawaii may retain a real estate Brokerage Firm as their agent. In such case, Buyer and/or Seller is represented by the Brokerage Firm and all of its licensees. Hawaii law requires real estate licensees to disclose orally or in writing to Seller and/or Buyer whom the licensee represents. The form of representation may be one of the following:

    **(a) Seller's Agent.** Brokerage Firm represents Seller only unless a disclosed dual agency exists. Seller's Agent owes the highest duties to Seller, including confidentiality, loyalty, and due care and diligence.

    **(b) Buyer's Agent.** Brokerage Firm represents Buyer only unless a disclosed dual agency exists. Buyer's Agent owes the highest duties to Buyer, including confidentiality, loyalty, and due care and diligence.

    **(c) Dual Agent.** Brokerage Firm represents both Buyer and Seller. This commonly occurs when licensees in the Brokerage Firm representing Seller have Buyer clients looking for types of property similar to Seller's property. In such event, the Brokerage Firm and all of its licensees represent both Buyer and Seller and are dual agents. Dual agents must remain neutral in negotiations and must not advance the interest of one party over the other. **A separate Dual Agency Consent Addendum is required under Hawaii law.**

    **(d) No Agency Representation** (see Paragraph A-2 (d) below)

A-2 **Disclosure.**

    **(a) Seller Representation:** Seller is represented by the Brokerage Firm     **KU Realty** and all its licensees. Brokerage Firm is [ X ] is not [   ] a member of the National Association of REALTORS®.

    **(b) Buyer Representation:** Buyer is represented by the Brokerage Firm     **Island Style Realty Inc** and all its licensees. Brokerage Firm is [ X ] is not [   ] a member of the National Association of REALTORS®.

    **(c) Dual Agency Representation:** Seller and Buyer are represented by the Brokerage Firm _____ _____ and all its licensees. Brokerage Firm is [   ] is not [   ] a member of the National Association of REALTORS®. A separate Dual Agency Consent Addendum is required.

    **(d) No Agency Representation:**
    [   ] **Seller** is a Customer and is not represented by a Brokerage Firm.
    [   ] **Buyer** is a Customer and is not represented by a Brokerage Firm.
    **It is recommended that Customers seek legal counsel prior to signing a Purchase Contract.**

    If requested, a licensee may present a Customer's Purchase Contract to Seller and report Seller's response. A licensee cannot, however, negotiate for or otherwise advise a Customer in the transaction.

    **Buyer and Seller acknowledge that oral or written disclosure relative to agency representation was provided to them before the signing of this Purchase Contract.**

X _____ 6/27/2013                        DFT           6/28/2013
   **BUYER'S INITIALS & DATE**                                   **SELLER'S INITIALS & DATE**

X _____ 6/27/2013                        DFT           6/28/2013
   **BUYER'S INITIALS & DATE**                                     **SELLER'S INITIALS & DATE**

Page 1 of 13

©Hawaii Association of REALTORS®
Purchase Contract
RR201 Rev. 3/12

Island Style Realty 94-539 Puahi St B Waipahu, HI 96797                        Phone 808-671-2225     Fax 808-671-2260       Nitta Kaopua L.
Joleen Dias              Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

## SECTION B: INITIAL EARNEST MONEY DEPOSIT RECEIPT

**B-1**   **Initial Earnest Money Deposit.** Received from    Jennifer Nitta    , the "Buyer," the
sum of $ 1,000.00    in the form of    Benjamin Nitta
Uncashed check
as an initial earnest money deposit. The initial earnest money deposit shall be deposited with Escrow by the next business day
after the Acceptance Date or as otherwise agreed in writing by the parties.

Received by  _Joleen Dias_    Agent's name    Joleen Dias
(Signature of Broker or Salesperson)

Bus 808-441-5721    Fax 808-671-2260    Cell 808-306-9115    E-mail joleen@isremail.com
Brokerage Firm Island Style Realty Inc
Brokerage Firm Address 94-539 Puahi St 1st Floor, Waipahu, HI 96797

**B-2**   **Interest on Deposit(s).** Upon opening of Escrow, unless Buyer instructs Escrow otherwise, any interest on Buyer's deposits
shall automatically accrue to the benefit of Escrow.

## SECTION C: ADDENDA

**C-1**   **Addenda.** The following addenda (forms), if checked, are attached to and made a part of this Purchase Contract. Fill in all
blanks. Write "NA" if not applicable. Each attached addendum must be properly signed and initialed (as applicable).

[ na ] 1031 Exchange
[ na ] Agreement of Sale
[ x ] "As Is" Condition
[ x ] Distressed Property
[ na ] Dual Agency Consent
[ na ] Early Occupancy Agreement
[ na ] FHA Financing/Real Estate Certification
[ x ] Lead Based Paint
[ na ] Plain Language
[ na ] Purchase Money Mortgage

[ na ] Rental Agreement
[ na ] Residential Leasehold Property
[ na ] Short Sale
[ na ] Standard Oceanfront Property
[ x ] VA Financing
[ na ] Other
[ na ] Other
[ na ] Other
[ na ] Other
[ na ] Other

## SECTION D: OFFER TO BUY AND PURCHASE PRICE

**D-1**   **Offer to Buy.** Buyer offers to buy the Property described below on the terms and conditions contained in this Purchase Contract,
and agrees that this Purchase Contract shall be binding if accepted by Seller on or before:

Date June 29, 2013    Time    1:00    AM [  ] PM [ x ].

**D-2**   **Purchase Price.** The Purchase Price for the Property in U.S. dollars shall be paid as follows:

$    1,000.00  Initial earnest money deposit from Paragraph B-1 above

$    1,500.00  Additional deposit, if any, paid into Escrow on or before    Satisfaction of J-1

$ _____ Balance of down payment (or balance of purchase price if all cash) paid into Escrow before closing

$    2,500.00  TOTAL CASH FUNDS FROM BUYER (exclusive of closing costs)

$  560,000.00  By way of New 100% VA financing from lender of Buyers choice.

$    (2,500.00)  Earnest money deposit to be returned to veteran buyer if not needed
for closing cost.

$  560,000.00  TOTAL PURCHASE PRICE

**Failure by Buyer to make any of the scheduled deposits as required by this Purchase Contract shall constitute a default,
and Seller may elect to terminate this Purchase Contract pursuant to Paragraph O-1.**

X _Agnes_ 6/27/2013    _DKt_ 6/28/2013
BUYER'S INITIALS & DATE    SELLER'S INITIALS & DATE

©Hawaii Association of REALTORS®    Page 2 of 13    RR201  Rev. 3/12 (NC)  For Release 5/13

## SECTION E: PROPERTY

**E-1** **Description:** Tax Map Key: Div. <u>1</u> /Zone <u>9</u> /Sec. <u>5</u> /Plat <u>022</u> /Parcel <u>091</u> /CPR <u>0000</u> (if applicable).

All of that [ x ] fee simple [   ] leasehold Property situated at: <u>95-226 Kaopua Lp, Mililani, HI  96789</u>

described as follows: <u>ALl the Fee simple single family home with 3 bedrooms 2 bath and</u>
<u>garage.</u>

The full legal description will be provided in the title report.

**[ x ] E-2** **Inclusions.** Sale includes all built-in furniture, attached existing fixtures, built-in appliances, water heater, electrical and/or gas and plumbing fixtures, attached carpeting, and the following indicated items. Fill in all blanks. Write "NA" if not applicable:

| | | | |
|---|---|---|---|
| [ x ] Air Conditioner | [ x ] Dryer | [na] Photovoltaic System | [na] Security Alarm System |
| [ x ] Automatic Garage Door | [na] Existing Window | [na] Pool Equipment (All) | [ x ] Smoke Detectors |
| [ x ] Ceiling Fan | Coverings | [ x ] Range | [na] Solar Water System |
| [ x ] Dishwasher | [na] Microwave | [ x ] Range Hood | [ x ] TV Cable Outlet |
| [ x ] Disposal | [na] Microwave Hood | [ x ] Refrigerator | [ x ] Washer |
| [na] Other | | | |

**[na] E-3** **Inventory List.** Inventory of furnishings and/or additional inclusions (the "inventory list" in this paragraph) is:
[   ] attached [   ] to be provided to Buyer by (date) _____ . If Seller does not provide the inventory list to Buyer within the specified time period, Buyer may elect to terminate this Purchase Contract pursuant to Paragraph O-3. If Buyer is not satisfied with the inventory list, Buyer may elect, within _____ ( ____ ) days of receipt of the inventory list, to terminate this Purchase Contract pursuant to Paragraph O-2.

**[na] E-4** **Exclusions.** The following items are specifically excluded: _____

## SECTION F: CLOSING

**F-1** **Closing.** For purposes of this Purchase Contract, "closing" shall be the date when all appropriate conveyance documents are recorded. Buyer and Seller agree to promptly execute appropriate or customary documents when requested by Escrow.

**F-2** **Scheduled Closing Date.** The "Scheduled Closing Date" shall be <u>45 days from acceptance</u>

If the Scheduled Closing Date falls on a day the Bureau of Conveyances of the State of Hawaii is closed, closing will be on the next day when documents can be recorded.

**F-3** **Change to the Scheduled Closing Date.**
*(Choose Paragraph F-3(a) OR F-3(b))*

[ x ] **(a)** **Extensions.** There is no automatic right to extend. If, for reasons beyond Buyer's or Seller's control, a party cannot perform its obligation to close by the Scheduled Closing Date, then such party may extend the Scheduled Closing Date up to <u>Ten</u> ( <u>10</u> ) days by delivery of written notice to the other party prior to the Scheduled Closing Date. Thereafter, time shall be of the essence, and if a party fails to perform by the extended Scheduled Closing Date, such party shall be considered in default and the other party may elect to terminate this Purchase Contract pursuant to Paragraph O-1. The extended Scheduled Closing Date may not be further extended unless Buyer and Seller agree in writing. This provision relates only to the extension of the Scheduled Closing Date.

[na] **(b)** **Time is of the Essence.** Time is of the essence and the Scheduled Closing Date may not be extended unless Buyer and Seller agree in writing.

**F-4** **Escrow.** This transaction shall be escrowed by: <u>Title Guaranty - Hawaii Kai</u> ("Escrow").

<u>Alan Chun</u>

The parties shall provide to Escrow in a timely manner fully executed copies of this Purchase Contract and any addenda, amendments, and documents which are required by Escrow.

**F-5** **Prorations and Closing Adjustments.** Based on a thirty (30) day proration, Escrow shall prorate the following, if applicable, as of the date of closing: real property tax, lease rents, interest on assumed obligations, mortgage and other insurance premiums, tenant rents, maintenance, private sewer, marina, and/or association fees, and <u>any other.</u> . When applicable, Escrow shall charge to Seller and credit to Buyer the amount of any tenant's security deposit.

**F-6** **Closing Costs.** The following is a list of customary closing costs (including Hawaii General Excise Tax where applicable), **and is not meant to be all-inclusive.** If HUD requirements apply, Buyer and Seller are aware that customary closing costs may be reflected differently on the HUD statement, but the net result will be the same. Escrow may charge the appropriate party other closing costs as directed by the parties.

X [signature] 6/27/2013
**BUYER'S INITIALS & DATE**

[signature DFT] 6/28/2013
**SELLER'S INITIALS & DATE**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com                Nitta Kaopua L

U.S. Bankruptcy Court - Hawaii   #13-00566   Dkt # 31   Filed  07/29/13   Page 11 of 23

| Charge to Buyer, if applicable: | Charge to Seller, if applicable: |
|---|---|
| 40% of the premium for standard coverage title insurance and any additional costs relating to the issuance of extended coverage policy (including a lender's policy) | 60% of the premium for standard coverage title insurance |
| | Cost of drafting of conveyance documents and bills of sale |
| Cost of drafting mortgage and note or agreement of sale | Cost of obtaining Seller's consents |
| Cost of obtaining Buyer's consents | 50% of Escrow fee |
| Buyer's notary fees | Seller's notary fees |
| All recording fees except documents to clear Seller's title | Cost of required staking or survey |
| 50% of Escrow fee | Recording fees to clear Seller's title |
| Condominium and Association ownership transfer fees | FHA or VA mandatory closing fees |
| FHA or VA discount points and any mortgage fees | Conveyance tax (subject to Paragraph F-7) |
| | FIRPTA (Federal withholding tax)/HARPTA (State withholding tax) |

**F-7** **Notice on Conveyance Tax.** Pursuant to Conveyance Tax Law, Chapter 247, Hawaii Revised Statutes, a higher conveyance tax must be paid if Buyer is ineligible to file a county real property tax homeowner's exemption on the Property. [CHECK ONE] Buyer declares that Buyer is purchasing the Property [ X ] as Buyer's principal residence [   ] as other than Buyer's principal residence. If the selection changes from Buyer's "principal residence" to "other than Buyer's principal residence", Buyer shall provide written notification to Seller and Escrow no later than fifteen (15) days prior to the Scheduled Closing Date. Should Buyer make such change, Buyer shall be charged at closing an amount equal to the difference in the conveyance tax.

**F-8** **Assessments.** An assessment is defined as any obligation (not including prorations and closing adjustments in Paragraph F-5) levied against the Property by a homeowner's association, governmental body, or any other entity with a legal right to assess. Assessments, if any, shall be charged as follows:
(a) Any lump sum assessments levied against the Property prior to the Acceptance Date shall be paid by [ x ] Seller or assumed by [   ] Buyer. Exceptions, if any: _none_
(b) Any assessments levied against the Property prior to the Acceptance Date which are being paid in installments shall be paid in full by [ x ] Seller or [   ] pro-rated by Escrow as of the date of closing.
Exceptions, if any: _none_
(c) If a new assessment is authorized against the Property between the Acceptance Date and the Scheduled Closing Date, Seller shall make appropriate disclosure under Paragraph I-2 and such assessment shall be paid as Buyer and Seller shall agree. If Buyer and Seller cannot reach an agreement within five (5) days of both parties being aware of the new assessment (unless Buyer has agreed to pay or assume the assessment), either party may elect to terminate this Purchase Contract pursuant to Paragraph O-3.

**F-9** **Consents.** Buyer and Seller may be required to obtain consents of lessors, homeowner or condominium associations, co-op boards, existing lenders, vendors, or other entities. Buyer or Seller shall cooperate and take all reasonable action to obtain such consents.

**F-10** **Risk of Loss.** Risk of loss passes to Buyer upon closing or Buyer's possession of the Property, whichever occurs sooner.

**F-11** **Possession.** Seller shall give Buyer possession of the Property, at closing or _____ at closing _____ .

**F-12** **Keys to the Property.** Seller, at Seller's sole cost and expense, shall provide Buyer at closing with all existing, but at least one (1) set of, functioning keys/controls (entry, interior, mail box, pool, security, parking area, and all garage door openers). **Buyer shall pay all deposits which may be required for any of these items.** Unless Buyer and Seller agree otherwise, all keys/controls and garage door openers shall be released to Buyer only after Escrow has verbally notified the parties and/or their agents that the closing has occurred. It is strongly recommended that Buyer re-key entry door lock(s) and re-program garage door openers upon change of ownership.

## SECTION G: TITLE

**G-1** **Preliminary Title Report.** Escrow is instructed to promptly order a Preliminary Title Report on the Property for delivery to Seller, Buyer, and their respective agents.

**G-2** **Title.** Seller agrees to convey the Property with warranties vesting marketable title in Buyer, free and clear of all liens and encumbrances EXCEPT: easements, covenants, conditions, reservations, and restrictions now of record, including but not limited to, those documents relating to a condominium, cooperative, PUD, subdivision, homeowner's/community association, or cluster development; and _per prelim_ .

(a) **Buyer's Review of Preliminary Title Report.** If Buyer is not satisfied with the Preliminary Title Report, Buyer may elect, within _____ Seven _____ ( 7 ) days of Buyer's receipt of the Preliminary Title Report, to terminate this Purchase Contract pursuant to Paragraph O-2.

[ x ] (b) **Title Defect(s).** If Buyer elects not to terminate under Paragraph G-2 (a) and if the Preliminary Title Report or any other report or any updates to such reports reveal that title cannot be delivered by Seller in accordance with Paragraph G-2, then the Seller shall make appropriate disclosures under Paragraph I-2, and Seller shall use reasonable efforts to cure any title defect(s). If, within _____ Ten _____ ( 10 ) days following receipt of any reported title defect(s) Seller does not cure such title defect(s), Buyer may elect to purchase the Property with such title defect(s) and Seller shall not be liable for such title defect(s). If Buyer elects not to accept the Property with such title defect(s), either Buyer or Seller may elect to terminate this Purchase Contract pursuant to Paragraph O-3.

X _____ [signature] 6/27/2013
BUYER'S INITIALS & DATE

[signature] DFT 6/28/2013
SELLER'S INITIALS & DATE

©Hawaii Association of REALTORS®                                    RR201 Rev. 3/12 (NC) For Release 5/13
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com                Nitta Kaopua L

DocuSign Envelope ID: 50677BBC-06AC-4E97-AAAD-7BFF0D1288C3

G-3  **Vesting and Tenancy.** Title shall vest in Buyer(s) as follows (provide full legal names and marital status for individuals, trust information, name and form of business entity, etc.). _____

Tenancy shall be <u>TBD in escrow</u>
If Buyer has not yet determined the vesting and/or tenancy, Buyer shall provide Escrow in writing with the selected names and tenancy within _____ days [fifteen (15) days if left blank] after the Acceptance Date.

### SECTION H: CASH FUNDS AND FINANCING CONTINGENCY

*(Choose Paragraph H-1 OR Paragraph H-2)*

[ x ] H-1  **No Contingency on Obtaining Cash Funds.** Buyer represents that there are no contingencies on Buyer's obtaining the necessary cash, including all deposits, down payment, and closing (including loan) costs to buy the Property (collectively "Cash Funds"). Buyer shall neither delay nor extend the Scheduled Closing Date to obtain the Cash Funds.

[   ] (a)  **Verification of Cash Funds.** Buyer shall provide evidence that is satisfactory to Seller of the availability of Cash Funds within _____ (____) days after the Acceptance Date. If Buyer is unable or fails to provide such evidence within the specified time period, Seller may elect to terminate this Purchase Contract pursuant to Paragraph O-3.

[ na ] H-2  **Contingency on Obtaining Cash Funds.** In reference to the balance of down payment or balance of purchase price, if all cash, Buyer's obligation to purchase the Property is contingent upon the following: _____

(a)  Buyer shall provide evidence that is satisfactory to Seller of Buyer's ability to obtain balance of down payment (or balance of purchase price if all cash) within _____ (____) days after the Acceptance Date.
(b)  If Buyer fails to provide Seller with such satisfactory evidence within the specified time period in Paragraph H-2(a), Seller may elect to terminate this Purchase Contract pursuant to Paragraph O-3.
(c)  If Seller is satisfied with evidence timely provided by Buyer in Paragraph H-2(a), but Buyer is unable to ultimately deposit the balance of down payment (or balance of purchase price if all cash) into Escrow in accordance with Paragraph D-2, then:
  (i)  Buyer may elect to terminate this Purchase Contract pursuant to Paragraph O-2; or
  (ii)  if Buyer elects not to terminate this Purchase Contract under Paragraph H-2(c)(i), then Seller may elect to terminate this Purchase Contract pursuant to Paragraph O-3.

[ x ] H-3  **Financing Contingency.** Buyer's obligation to purchase the Property is contingent upon Buyer obtaining the loan described in Paragraph D-2 ("Mortgage Loan").
(a)  If Buyer does not obtain a conditional loan commitment letter, or is unable to satisfy all conditions of the loan commitment letter, within the time periods specified in Paragraph H-4, then Buyer may elect to terminate this Purchase Contract pursuant to Paragraph O-2.
(b)  If Buyer has met all conditions of the loan commitment letter but lender fails to fund prior to closing, then Buyer may elect to terminate this Purchase Contract pursuant to Paragraph O-3.
(c)  Buyer may:
  (i)  waive this Financing Contingency and purchase the Property on an all cash basis, or
  (ii)  increase the amount of CASH FUNDS in order to satisfy all of Lender's requirements for funding the loan.
If Buyer elects either of these two options, Buyer shall promptly provide written notice of such election to Seller, together with evidence of Buyer's ability to perform PRIOR to expiration of the time periods stated in Paragraph H-4.

[ x ] H-4  **Buyer's Obligations.** Buyer shall act in good faith to obtain the Mortgage Loan as described in Paragraph D-2. Buyer is obligated to submit a completed and signed application for the Mortgage Loan with required fees by
(a)  _____<u>within 3 business days of acceptance</u>_____ , and to deliver to Seller a Pre-Qualification Letter based upon a review of Buyer's credit report and items in the loan application by
(b)  _____ . The Pre-Qualification Letter shall state that Buyer is creditworthy and qualified for the Mortgage Loan subject to Lender's requirements. However, Buyer may substitute a Pre-Approval Letter based upon automated underwriting or underwriter findings. Buyer is obligated to deliver to Seller by
(c)  _____<u>35 days from acceptance</u>_____ , a Conditional Loan Commitment Letter based upon underwriter approval and review of property appraisal which shall state that the loan has been approved and Lender will make the loan under specified conditions. Buyer shall deliver to Seller written evidence that Buyer has satisfied all conditions specified by Lender except conditions which cannot be satisfied by Buyer until closing, such as payoff of Buyer's debt or receipt by Buyer of proceeds from the sale of Buyer's property, no later than (d)  _____<u>Seven</u>_____ (__7__) days after issuance of such commitment letter. Buyer authorizes Seller and Seller's Brokerage Firm to contact Buyer's Lender and Escrow regarding the status of Buyer's Mortgage Loan, including commitment letter and satisfaction of conditions.

H-5  **Seller's Right to Cancel.** Should Buyer fail to satisfy any obligation under Paragraphs H-2, H-3, and/or H-4 within the time periods specified, Seller may elect to terminate this Purchase Contract pursuant to Paragraph O-3.

X _____ 6/27/2013
**BUYER'S INITIALS & DATE**

_____ 6/28/2013
**SELLER'S INITIALS & DATE**

©Hawaii Association of REALTORS®

RR201  Rev. 3/12 (NC)  For Release 5/13

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

Nitta Kaopua L

U.S. Bankruptcy Court - Hawaii  #13-00566  Dkt # 31  Filed 07/29/13  Page 13 of 23

H-6 **Confidentiality.** Seller and Brokerage Firms shall hold in strict confidence any information provided by Buyer as evidence for verification of cash funds and any other financial information provided under Section H.

## SECTION I: SELLER'S OBLIGATION TO DISCLOSE AND DISCLOSURE STATEMENT

I-1 **Seller's Obligation to Disclose.** Pursuant to Hawaii Revised Statutes Chapter 508D (for the sale of residential real property), Seller is obligated to fully and accurately disclose in writing to Buyer any fact, defect, or condition, past or present, that would be expected to measurably affect the value of the Property to a reasonable person (a "material fact"). No later than _____ ( **NA** ) days [ten (10) days if left blank] from the Acceptance Date, Seller shall provide Buyer with a written Disclosure Statement signed and dated by Seller within six (6) months before or ten (10) days after the Acceptance Date. Such Disclosure Statement shall be prepared in good faith and with due care and shall disclose all material facts relating to the Property that: (i) are within the knowledge or control of Seller; (ii) can be observed from visible, accessible areas; or, (iii) are required to be disclosed under Section 508D-4.5, Section 508D-15, and Section 421J-2 of the Hawaii Revised Statutes. Seller acknowledges and agrees that the disclosure requirements under Chapter 508D are in addition to all other disclosure obligations of Seller required by law relating to the sale of residential real property.

I-2 **Seller's Obligation Upon Later Discovered Information.** Under Chapter 508D, if after Seller delivers a Disclosure Statement to Buyer and prior to closing, Seller becomes aware of information that was not previously disclosed or that makes any statement in the Disclosure Statement inaccurate, and said information directly, substantially, and adversely affects the value of the Property (called "Later Discovered Information" in this paragraph), then Seller shall provide an Amended Disclosure Statement (a written statement prepared by Seller or at Seller's direction) to Buyer within _____ ( **NA** ) days [or ten (10) days if left blank] after the Seller's discovery of the inaccuracy, and in any event, no later than twelve noon of the last business day prior to the recorded sale of the Property. Buyer's rights upon discovery of Later Discovered Information and/or receipt of the Amended Disclosure Statement are found in Paragraph I-4. The information described in this paragraph Later Discovered Information may arise from many sources, including but not limited to: title report(s), inspection report(s), survey report, termite inspection report, condominium, cooperative, subdivision, PUD, homeowner's/planned community documents, and rental property matters.

I-3 **Seller's Disclosure is Not a Warranty.** The Disclosure Statement is NOT a warranty of any kind. Under Chapter 508D, the Disclosure Statement shall not be construed as a substitute for any expert inspection, professional advice, or warranty that Buyer may wish to obtain.

I-4 **Buyer's Rights and Obligations Upon Receipt of Disclosure Statement or Amended Disclosure Statement.**
(a) Upon receipt of the Disclosure Statement or Amended Disclosure Statement, Buyer shall provide Seller with a written acknowledgment within _____ ( **na** ) days of receipt.
(b) Upon receipt of the Disclosure Statement or Amended Disclosure Statement, Buyer shall have _____ ( **na** ) days [or fifteen (15) days if left blank] to examine the Disclosure Statement or Amended Disclosure Statement and to rescind this Purchase Contract. Should Buyer elect to rescind this Purchase Contract, Buyer must give Seller or Seller's Agent written notice of such rescission within the specified time period and the termination provisions of Paragraph O-2 shall apply.

I-5 **Buyer's Rights and Obligations Upon Later Discovered Inaccurate Information.** Upon discovery by Buyer that the Disclosure Statement or Amended Disclosure Statement fails to disclose a material fact or contains an inaccurate assertion that directly, substantially, and adversely affects the value of the Property, and if Buyer was not aware of the foregoing failure or inaccuracy, Buyer may elect to rescind this Purchase Contract within the earlier to occur of fifteen (15) days of the discovery by Buyer of the failure or inaccuracy, or _____**Seven**_____ ( **7** ) days [or fifteen (15) days if left blank] of the receipt of an Amended Disclosure Statement correcting the failure or inaccuracy. If Buyer elects to rescind this Purchase Contract, Buyer must give Seller or Seller's Agent written notice of such rescission within the specified time period and the termination provisions of Paragraph O-2 shall apply. This Paragraph does not change Seller's obligations under Paragraph I-2.

I-6 **Buyer's Remedies Regarding Mandatory Seller's Disclosure Statement.** If Seller fails to comply with Paragraphs I-1 or I-2, Buyer may elect to complete the purchase of the Property. When Buyer is provided a Disclosure Statement or Amended Disclosure Statement and Buyer decides to rescind this Purchase Contract, Buyer shall not be entitled to any damages but shall be entitled to the return of all deposits, and in such case, Buyer's deposits shall be immediately returned. If Seller negligently fails to provide the required Disclosure Statement or Amended Disclosure Statement, Seller shall be liable to Buyer for the amount of actual damages suffered as a result of Seller's negligence. A court may also award the prevailing party attorneys' fees, court costs, and administrative fees. Buyer's right to rescind this Purchase Contract under Paragraphs I-4 and I-5 shall not apply after the Scheduled Closing Date. Any action to rescind this Purchase Contract under Paragraphs I-4 and I-5 shall commence prior to the Scheduled Closing Date.

I-7 **Seller's Obligation to Disclose on Non-Residential Real Property.** Seller agrees to comply with disclosure requirements under Hawaii law for the sale of non-residential real property.

I-8 **General Disclosures.** Paragraphs I-8(a) through I-8(i) describe general issues which could affect the Property. Buyer should make appropriate inquiry regarding these issues as part of Buyer's inspection right under Paragraph J-1.
(a) **Governmental Restrictions Disclosure.** The Property is subject to all applicable federal, state and county laws, statutes, regulations, codes, ordinances, rules, procedures, restrictions, and requirements, including, but not limited to, those concerning land use, zoning, building permits and requirements, setbacks, height limitations, and allowable uses.
(b) **Asbestos Disclosure.** Asbestos materials are hazardous to one's health, particularly if asbestos fibers are released into the air and inhaled. In the past (before 1979, but possibly since) asbestos was a commonly used insulation material in heating facilities and in certain types of floor and ceiling materials, shingles, plaster, products, cement and other building

X ⟨signature⟩ 6/27/2013       ⟨initials⟩ 6/28/2013
**BUYER'S INITIALS & DATE**       **SELLER'S INITIALS & DATE**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com       Nitta Kaopua L

U.S. Bankruptcy Court - Hawaii   #13-00566   Dkt # 31   Filed 07/29/13   Page 14 of 23

materials. Buyer is aware that Buyer should make appropriate inquiry into the possible existence of asbestos in, on, or at the Property. Structures having "popcorn" or "cottage cheese" type ceilings may contain asbestos fibers or asbestos-containing material. Such ceilings should not be disturbed since it could release asbestos fibers in the air. Any disturbance should be done only by licensed abatement contractors.

**(c) Hazardous Waste and Toxic Substances Disclosure.** Federal and state laws place strict liability on property owners for dangers caused by hazardous waste management and may require that such owners pay for the cost of the cleanup of hazardous substances and other toxic substances. Buyer is aware that Buyer should make appropriate inquiries into the current and past use of the Property and should seek an environmental assessment to ascertain the possible existence of such hazardous substances or materials on or under the Property. Buyer is aware Buyer may have liability for hazardous substances located on or under the Property even if Buyer did not cause such substances to be on or under the Property.

**(d) Wastewater Disposal Disclosure.** The State of Hawaii Department of Health and the individual counties may require upgrades from cesspools to septic tanks or connection of new systems in certain situations. Additionally, the Federal Environmental Protection Agency ("EPA") has issued regulations requiring that all "large capacity cesspools" be closed and converted to EPA approved systems by April 5, 2005 or face substantial penalties. Buyer should contact the State of Hawaii Department of Health, the EPA, and the individual counties for additional information.

**(e) Mold Disclosure.** Mold and/or other microscopic organisms may exist in, on, or at the Property. Molds are simple, microscopic organisms, present everywhere. Mold spores may cause health problems. Mold will grow and multiply whenever sufficient moisture, temperature and organic material are present. Brokerage Firms, brokers, and agents are not qualified to inspect the Property for mold or to make recommendations or determinations concerning possible health or safety issues. More information is available at the EPA's website.

**(f) Sex Offender Registration ("Megan's Law").** Hawaii has enacted a law requiring sex offenders to register with the Attorney General's office. Seller makes no representation as to whether or not the public will have access to this information. Neither Seller nor Brokerage Firms are required to obtain information regarding sex offenders.

**(g) Flood Zone.** The Property may be located in an area which is a Flood Hazard Zone. Lenders may require Buyer to purchase flood insurance in order to obtain any loan secured by the Property. In addition, various governmental agencies have special requirements for obtaining building permits for properties located in Flood Hazard Districts. Buyer should contact the National Flood Insurance Office for more information regarding flood zones and the appropriate agencies concerning building permits.

**(h) Lead-Based Paint.** Federal Law requires that the seller of any interest in residential real property must provide the buyer with any information on lead-based paint hazards from risk assessments or inspections in the seller's possession and notify the buyer of any known lead-based paint hazards. Residential dwellings built prior to 1978 may present exposure to lead from lead-based paint that may place young children at risk of developing lead poisoning. Lead poisoning also poses a particular risk to pregnant women. More information is available at the EPA website.

**(i) Lead-Based Paint Renovation, Repair, and Painting.** In residential real property, the EPA under the Toxic Substance Control Act issued a rule to address lead-based paint hazards created by renovation, repair, and painting activities that disturb lead based paint. These rules establish requirements for training renovators, other renovation workers, dust sampling technicians, and renovation firms; for accrediting providers of renovation and dust sampling technician training to meet the new Federal requirements effective as of April 22, 2010, or substantial penalties may apply. The rule applies to paid contractors working in pre-1978 housing (residential, public or commercial buildings and all rental housing), child care facilities and schools with lead-based paint. Contractors include home improvement contractors, maintenance workers in multi-family housing, painters, and other specialty trades. More information is available at the EPA website.

## SECTION J: INSPECTION, MAINTENANCE AND WARRANTIES

J-1 **General Inspection of Property Contingency.** At Buyer's sole cost and expense Buyer shall have the right to (personally or by any expert, professional, or other representatives of Buyer's choice): (a) inspect the Property or any portion thereof; (b) inspect all major appliances and fixtures (plumbing, electric, and gas) included in the sale; (c) inspect all public records relating to the Property and its use; and (d) review all matters described in Paragraph I-8. Seller shall provide Buyer and Buyer's representative(s) access to the Property for inspection(s), during reasonable hours with reasonable prior notice to Seller. The obligation of Buyer to purchase the Property is contingent upon Buyer's approval of inspections and review of all matters described in Paragraph I-8 within ___Ten___ ( _10_ ) days after the Acceptance Date. All inspections and reviews must be completed within this time period. Seller agrees that the property inspection requires that the utilities be turned on, including propane, if applicable, at Seller's expense. If Buyer disapproves of the inspection or review results within the specified time period, Buyer may elect to terminate this Purchase Contract pursuant to Paragraph O-2.

**If Buyer fails to make an election in writing to terminate this Purchase Contract within the specified time period, then Buyer will have waived this contingency.**

J-2 **Recommendation Regarding Home Inspection.** It is strongly recommended that Buyer obtain a home inspection as well as inspections in specialized areas beyond the scope of the standard home inspection service.

[ x ] J-3 **Property Condition Maintenance and Final Walk Through.** Seller shall maintain the interior and exterior of the Property in the same condition and repair as when Buyer inspected the Property pursuant to Paragraphs J-1 and J-2, or as otherwise repaired and/or corrected as agreed to in writing between Buyer and Seller. If the Property has not been maintained, or repaired and/or corrected as agreed to in writing between Buyer and Seller, then the provisions of Paragraph J-4 shall apply. Buyer and/or Buyer's representative shall have the right to conduct a final walk through of the Property no later than ___Three___ ( _3_ ) days prior to closing: (a) to confirm that the Property is in the same

X _[signature]_ 6/27/2013     _[initials]_ 6/28/2013

BUYER'S INITIALS & DATE        **Page 7 of 13**        SELLER'S INITIALS & DATE

©Hawaii Association of REALTORS®        RR201 Rev. 3/12 (NC) For Release 5/13

condition and repair that it was on the date that Buyer inspected the Property pursuant to Paragraphs J-1 and J-2; and/or (b) to inspect any repairs and/or corrections made by Seller, as agreed to in writing between Buyer and Seller. Seller understands that the final walk through requires that the utilities be on, including propane, if applicable, at Seller's expense. If Buyer and/or Buyer's representative fails to conduct the final walk through within the specified time period, Buyer will have waived this right.

J-4   **Withheld/Collected Funds for Repairs/Maintenance.** If Seller has failed to maintain the Property pursuant to Paragraph J-3, or has not completed any agreed upon repairs and/or corrections no later than _____ **Three** _____ ( **3** ) days prior to closing, then the parties agree that 150% of the estimated cost shall be withheld/collected from Seller and retained in Escrow until completion. Applicable Escrow fees may apply. All bills for maintenance and repairs/corrections will be paid through Escrow. Any balance remaining after completion of all maintenance and repairs/corrections shall be returned to Seller; provided, however, that if maintenance and repairs/corrections are not completed within _____ **One** _____ ( **1** ) days after closing, said funds will be disbursed to Buyer. Should Escrow require the parties to sign a formal withholding and disbursement agreement confirming the agreement of Buyer and Seller, then all parties agree to immediately execute Escrow's withholding and disbursement agreement upon request.

J-5   **No Continuing Warranty.** Buyer understands that no continuing warranty after closing regarding the interior or exterior of the Property is expressed or implied.

J-6   **Home Warranty Programs.** Buyer understands that Buyer may obtain from a third party for a fee, home warranties covering appliances, electrical and/or gas and plumbing fixtures and equipment and other items included with the Property. If such a home warranty is available, it may be obtained at Buyer's expense from any provider of Buyer's choice.

It is strongly recommended that Buyer obtain a home warranty.

[ x ] J-7   **Existing Warranties, Plans, etc.** Seller shall provide to Buyer at closing, if such items are in Seller's possession: (a) any warranty documents covering the improvements and all other property being sold; (b) instruction booklets covering the appliances being sold; and (c) all originals and copies of blueprints, specifications, and copies of architectural or engineering drawings relating to the Property. Buyer understands that: (a) any warranties delivered by Seller to Buyer represent obligations of other persons or entities, not Seller; (b) the warranties and other documents are provided for informational purposes only; (c) such items may not reflect improvements as built; (d) Seller does not promise that any such warranties are transferable to Buyer; and (e) Buyer must contact the providers of such warranties to determine whether the warranties are transferable to Buyer.

[ x ] J-8   **Removal of Items from Property.** No later than _____ **Five** _____ ( **5** ) days prior to closing, Seller shall dispose of all unwanted personal belongings, trash, and junk, both inside and outside any improvements. Should Seller not comply within the stated timeframe, the provisions of Paragraph J-4 shall apply.

[ x ] J-9   **Cleaning.** No later than _____ **Three** _____ ( **3** ) days prior to closing, Seller shall, at Seller's expense, have the interior of the improvements on the Property cleaned. Cleaning shall include all appliances, cupboards, drawers, floors, jalousies, screens and windows. Seller shall also have the interior carpets professionally shampooed. Should Seller not comply within the stated timeframe, the provisions of Paragraph J-4 shall apply.

[ na ] J-10   **Pet Related Treatment.** Seller shall, at Seller's expense, remove any pets from the Property, and after carpets have been professionally shampooed pursuant to Paragraph J-9, have the interior of the Property treated for fleas/ticks by a licensed pest control operator. If Seller does not have the Property treated for fleas/ticks by a licensed pest control operator as required, then Seller agrees that an amount equal to 150% of the estimated cost of treating the Property for fleas/ticks by a licensed pest control operator shall be held in Escrow until completed; provided however, that any remaining funds held shall be automatically disbursed to Buyer by Escrow if the Property is not treated for fleas/ticks by a licensed pest control operator within _____ (____) days after closing. All licensed pest control operator treatment shall be paid through Escrow and any balance remaining after completion of professional treatment shall be returned to Seller.

**SECTION K: STAKING AND SURVEY**
**(This may/may not apply to condominiums or cooperatives.)**
*(Choose Paragraph K-1 OR Paragraph K-2)*

[ na ] K-1   **Staking (Boundary Points).** No later than _____ (____) days prior to the Scheduled Closing Date, Seller shall, at Seller's sole cost and expense, have a land surveyor licensed in the State of Hawaii stake the Property. Buyer may have a land surveyor licensed in the State of Hawaii verify the accuracy of the location of the boundary points prior to closing. Seller shall reimburse Buyer for the cost of this verification at closing ONLY if the location of the original stakes proves to be inaccurate. Buyer understands that staking is not the same type of survey as described in Paragraph K-2, and does not confirm the accuracy of the description or the land area of the Property, or the existence or absence of encroachments onto the Property or onto a neighboring property. No map is required.

[ na ] K-2   **Survey.** No later than _____ (____) days prior to the Scheduled Closing Date, Seller shall, at Seller's sole cost and expense, have a land surveyor licensed in the State of Hawaii: (a) survey the Property even if the boundary points are visible and; (b) if improvements exist along the Property line, provide Buyer with a map (with surveyor's stamp) and accompanying report to show the perimeters of the Property and the location of any improvements in the vicinity of the perimeter Property lines. The survey and map may not address whether improvements on the Property are in compliance with State and/or County requirements, and/or subdivision covenants, conditions, and restrictions.

K-3   **Boundary Encroachment.** If encroachment(s) onto an adjoining property or onto the Property by an adjoining property is revealed or discovered, Buyer may elect to accept (in writing) such existing encroachment(s) at its current location, within _____ **na** _____ ) days of discovery, or Buyer shall instruct Seller to, and Seller shall use Seller's reasonable efforts

---

X [signature] 6/27/2013                       [signature]                6/28/2013

**BUYER'S INITIALS & DATE**                     **SELLER'S INITIALS & DATE**

©Hawaii Association of REALTORS®         **Page 8 of 13**          RR201 Rev. 3/12 (NC) For Release 5/13

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com          Nitta Kaopua I.

U.S. Bankruptcy Court - Hawaii   #13-00566   Dkt # 31   Filed 07/29/13   Page 16 of 23

to: (a) remove such encroachment(s) if acceptable to Buyer at Seller's and/or the adjoining owner(s)' sole cost and expense; or (b) obtain encroachment agreement(s) at Seller's and/or the adjoining owner(s)' sole cost and expense, with the affected adjoining owner(s) which is acceptable to Buyer, and if neither (a) nor (b) occurs within ( na ) days prior to closing, Buyer may accept the encroachment(s) or elect to terminate this Purchase Contract pursuant to Paragraph O-3. If in remedying the revealed encroachment, the encroachment is partially or totally removed, then Seller shall be responsible for the correction of the survey (if Paragraph K-2 was checked) to reflect any changes in the revealed encroachment no later than _____ ( na ) days prior to closing. Under Chapter 669 Hawaii Revised Statutes (de minimis), certain tolerances for discrepancies involving improvements built along the boundary line of the Property for specific zonings are established, and such improvements shall not be considered encroachments.

**K-4 Staking/Survey Discrepancies.** In the event the staking or survey report indicates there are visible discrepancies concerning the boundary points and/or improvements along the Property line that directly, substantially and adversely affect the value of the Property, then Seller shall make appropriate disclosures under Paragraph I-2.

## SECTION L: TERMITE PROVISIONS

**L-1 Scope of Termite Inspection Report.** Buyer is aware that a termite inspection report may only address visible evidence of active ("live") termite infestation and visible damage in accessible areas. It may not address termite infestation and/or damage occurring in inaccessible areas of the improvements described in this Purchase Contract. Seller agrees to disclose in writing, any prior and/or current termite infestation and/or damage of which Seller is aware.

**[ x ] L-2 Termite Inspection Contingency.** Within _____ Ten ____ ( 10 ) days of the Acceptance Date, [ x ] Buyer [ ] Seller shall select a licensed pest control operator ("Operator") to conduct an inspection and issue a termite inspection report ("inspection report") on the Property's improvements. Should such party fail to select an Operator and notify the other party in writing of the name of an Operator within the time stated, the other party shall select an Operator within five (5) days thereafter. Seller shall promptly order the inspection and inspection report from the selected Operator. The inspection report shall be delivered to Buyer by _____ order after NOV _____ (time period/date).

[ x ] Buyer [ ] Seller shall pay for the inspection and the issuance of the inspection report at a cost not to exceed $ 450.00 _____ . If Buyer's Lender requires an updated inspection report prior to funding Buyer's loan, Buyer shall pay the cost of the updated inspection report.

If the inspection report indicates visible evidence of active ("live") termite infestation, Seller shall order and pay for recommended treatment for that condition (not to include preventive maintenance). Buyer and Seller understand such treatment may cause damage to plants. The obligation of Buyer to purchase the Property is contingent upon the delivery to Buyer within the time specified above of an inspection report stating there is no visible evidence of active ("live") termite infestation, or the treatment of such improvements by no later than five (5) days prior to the Scheduled Closing Date. If the contingency is not fulfilled within the time period(s) specified, Buyer may elect to terminate this Purchase Contract pursuant to Paragraph O-3.

**L-3 Termite Damage.** In the event the inspection report indicates there is visible damage to the improvements caused by termite infestation, and said damage directly, substantially and adversely affects the value of the Property, then Seller shall make appropriate disclosures under Paragraph I-2.

**L-4 Latent or Hidden Termite Infestation and/or Damage.** Buyer acknowledges that there may be latent or hidden termite infestation and/or damage of which Seller and Seller's Brokerage Firm are not aware and for which Seller and Seller's Brokerage Firm will not be held liable. Seller, Seller's Brokerage Firm, Buyer's Brokerage Firm, and their respective licensees make no representations or warranties that the Property is free from latent or hidden termite infestation and/or damage. Buyer and Seller release Brokerage Firms and their respective licensees from any and all liability with regard to any latent or hidden termite infestation and/or damage.

## SECTION M: CONDOMINIUM/COOPERATIVE/SUBDIVISION/PUD/ HOMEOWNER/PLANNED COMMUNITY ASSOCIATION

**[ x ] M-1 Contingency on Documentation Approval.** Buyer's obligation to purchase the Property is contingent upon Seller providing the following documentation to Buyer for review and approval: *(Check all that apply)*

| | |
|---|---|
| [ x ] Approved Minutes of the last three (3) Board of Directors Meeting | [ x ] Current and/or Proposed Budget |
| [ x ] Articles of Incorporation/Association and Amendments, if any | [ x ] Current House Rules |
| | [ x ] Declaration and Amendments, if any |
| [ x ] By-laws and Amendments, if any | [ x ] Design Standards and/or Guidelines |
| [ x ] Copy of any and all pending litigation complaints filed by or against the Owner's Association and/or its directors that are currently unresolved, if any | [ x ] Insurance Summary |
| | [ x ] Lenders Disclosures, if obtainable |
| | [ x ] Minutes of the last Annual Meeting |
| [ xx ] Covenants, Conditions and Restrictions (CC&Rs) | [ x ] Planned Community Documents |
| [ x ] Current Financial Statement | [ x ] Project Information Form RR105c, if obtainable |
| [ ] Other, be specific | [ x ] Reserve Study or Summary, if obtainable |
| | [ x ] Subdivision and/or title documents |
| | [ ] Other, be specific |

Seller, at Seller's expense, shall provide the selected documents to Buyer within _____ Seven ____ ( 7 ) days of the Acceptance Date. If within _____ Seven ____ ( 7 ) days of receipt of the selected documents Buyer does not accept the Property based on information contained in the selected documents, Buyer may elect to terminate this Purchase Contract

X _____ ~~ANKH~~  6/27/2013
**BUYER'S INITIALS & DATE**

6/28/2013
**SELLER'S INITIALS & DATE**

©Hawaii Association of REALTORS®

RR201 Rev. 3/12 (NC) For Release 5/13

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com

Nitta Kaopua L

pursuant to Paragraph O-2. In the event that this Purchase Contract is terminated, Buyer agrees to promptly return all documents provided pursuant to this paragraph to Seller or Seller's agent, including any other documents provided to Buyer during the escrow period. Seller not being in default, Buyer shall reimburse Seller for the cost of such documentation if the documents are not returned within _____ Three _____ ( 3 ) days of electing termination of this Purchase Contract.

M-2 **Review of Documents.** Buyer is advised that Brokerage Firm(s)' scope of service does not include the interpretation of documentation referred to in Paragraph M-1. Brokerage Firm(s) recommends that Buyer consult with a licensed attorney and/or CPA with expertise in condominium, cooperative, subdivision, PUD, and or homeowner's/planned community documents to review and explain such documents to Buyer involved in this transaction. Buyer acknowledges that the maintenance fee, homeowner's or community association fees, or any other fees or charges reflected in the documentation transmitted to Buyer for review and approval may be increased in the future.

M-3 **Documents Issued During the Escrow Period.** If Paragraph M-1 was checked, Seller shall provide any additions, supplements, modifications, and amendments to the documents checked in Paragraph M-1 issued during the escrow period. If there is any information that directly, substantially and adversely affects the value of the Property, then Seller shall make appropriate disclosures under Paragraph I-2.

M-4 **Common Element Discrepancies.** Seller is not responsible for repair of condominium common and limited common elements or cooperative common areas. Seller is only responsible for reporting such defects or damage to the Association of Apartment Owners or other governing body only to the extent that Seller's unit is affected.

## SECTION N: RENTAL PROPERTY MATTERS

*(Choose Paragraph N-1 OR Paragraph N-2)*

**[na]** N-1 **Rental Documents.** The Property shall be subject to the existing: *(Choose all that apply)*

[  ] Rental Agreement                          [  ] Property Condition Form
[  ] Rental Management Contract(s)             [  ] Short Term Vacation Rental Reservation(s)
[  ] Other _____            [  ] Other _____

Seller shall provide copies of such documents to Buyer within _____ (_____) days after the Acceptance Date. If within _____ (_____) days of receipt of such documents, Buyer does not accept the Property based upon information contained in the selected documents, Buyer may elect to terminate this Purchase Contract pursuant to Paragraph O-2. Any security deposits or vacation rental deposits will be transferred to Buyer at closing.

**[ x ]** N-2 **Delivery of Possession of the Property at Closing.** Seller shall deliver possession of the Property at closing vacant and free of tenants, tenants' possessions, leases, rental management contracts, short term rental reservations, or any other rental or service commitments.

N-3 **Rental Agreement Changes During the Escrow Period.** During the escrow period, Seller shall not, without the prior written consent of Buyer, make any changes to the documents described in Paragraph N-1, or enter into any new Rental Agreement(s), which extend beyond the Scheduled Closing Date.

## SECTION O: TERMINATION, MEDIATION, ARBITRATION, AND OTHER MATTERS

O-1 **Termination Due to Default.** In the event that Buyer is in default for failure to perform Buyer's obligations under this Purchase Contract (Seller not being in default), Seller may terminate this Purchase Contract, and (a) bring an action for damages for breach of contract, or (b) retain the initial earnest money deposit and all additional deposits provided for in this Purchase Contract.

In the event Seller is in default for failure to perform Seller's obligations under this Purchase Contract (Buyer not being in default), Buyer may (a) terminate this Purchase Contract and bring an action for damages for breach of contract, or (b) seek specific performance of this Purchase Contract.

The foregoing shall not exclude any other remedies available under the law to either Seller or Buyer due to the other party's default.

O-2 **Termination *Within* Contingency Time Period.** Should this Purchase Contract specifically designate this paragraph to govern the termination process for any term of this Purchase Contract, any party given the right to terminate this Purchase Contract pursuant to such term, and who elects to do so, must deliver to the other party a written notice of termination prior to the expiration of the time period or the date specified in such term. If the party given the right to terminate fails to deliver the written notice to the other party within such time period or by such date, the termination right shall be deemed to be waived (as to that party) and can no longer be used by that party as a reason to terminate this Purchase Contract. If the terminating party so terminates this Purchase Contract, Buyer and Seller shall promptly execute all cancellation documents requested by Escrow, and Escrow shall, unless otherwise agreed to in this Purchase Contract, return to Buyer all deposits previously made, less the amount of any escrow expenses or fees chargeable to Buyer. Thereafter, neither Buyer nor Seller shall have any further rights or obligations under this Purchase Contract.

O-3 **Termination *After* a Specified Contingency/Condition Time Period.** Should this Purchase Contract specifically designate this paragraph to govern the termination process for any term of this Purchase Contract, any party given the right to terminate this Purchase Contract pursuant to such term, and who elects to do so, must deliver to the other party a written notice of termination within _____ Seven _____ ( 7 ) days [seven (7) days if left blank] of the expiration of the time period or the date specified in such term. If the party given the right to terminate fails to deliver the written notice to the other party within the time period specified in this Paragraph, the termination right shall be deemed to be waived (as to that party) and can no longer be used by that party as a reason to terminate this Purchase Contract. If the terminating party so terminates this Purchase Contract, Buyer and Seller shall promptly execute all cancellation documents requested

---

U.S. Bankruptcy Court - Hawaii  #13-00566  Dkt # 31  Filed  07/29/13  Page 18 of 23

DocuSign Envelope ID: 50677BBC-06AC-4E97-AAAD-7BFF0D1288C3

by Escrow, and Escrow shall, unless otherwise agreed to in this Purchase Contract, return to Buyer all deposits previously made, less the amount of any escrow expenses or fees chargeable to Buyer. Thereafter, neither Buyer nor Seller shall have any further rights or obligations under this Purchase Contract.

O-4 **Mediation.** If any dispute or claim arises out of this Purchase Contract prior to or after closing between Buyer and Seller, or between Buyer and/or Seller and a Brokerage Firm and all its licensees assisting in this transaction, and the parties to such dispute or claim are unable to resolve the dispute, Buyer and Seller agree in good faith to attempt to settle such dispute or claim by non-binding mediation. This paragraph shall not apply to any complaint of unethical conduct against a Brokerage Firm and all its licensees who are obligated to comply with the Code of Ethics of the National Association of REALTORS®. Such complaints against a Brokerage Firm(s) or its licensees assisting in this transaction must be brought before the Local Board of REALTORS® of which the Brokerage Firm and all its licensees are members.

O-5 **Arbitration.** If any dispute or claim arises out of this Purchase Contract during this transaction or at any time after closing, between Buyer and Seller, or between Buyer and/or Seller and a Brokerage Firm and all its licensees assisting in this transaction, and if such dispute cannot be resolved through mediation, then the parties are encouraged to consider arbitration as an alternative to litigation. It is recommended that the parties seek legal counsel to make this determination.

O-6 **Third Party Claims.** It is understood that if a dispute or claim is made by or against a third party who is not obligated or willing to mediate or arbitrate such dispute or claim, then Buyer and Seller shall not be required to mediate or arbitrate such dispute or claim.

O-7 **Choice of Law and Forum.** The Property is located in the State of Hawaii. This Purchase Contract shall be governed by and construed according to the laws of the State of Hawaii. All legal actions or proceedings concerning this Purchase Contract and/or the Property shall be filed and conducted in the appropriate state or federal court located in the State of Hawaii. Any mediation, arbitration, and/or litigation in the state court, shall be filed and conducted in the county where the Property is located.

O-8 **Attorney's Fees.** In the event of default by a party and/or a legal action or arbitration (including a claim by a Brokerage Firm for commission), the prevailing party shall be entitled to recover all costs incurred including reasonable attorneys' fees.

## SECTION P: FOREIGN OR NON-RESIDENT BUYER AND/OR SELLER

P-1 **Hawaii Real Property Tax Act ("HARPTA") Withholding Required if Seller is a Non-Resident of the State of Hawaii.** Under Hawaii law, if Seller is a non-resident person or entity (corporation, partnership, LLC, trust, or estate) of the State of Hawaii, Buyer must withhold a specified percentage of the "amount realized" by Seller on the sale of the Property and forward the amount with the appropriate form to the State Department of Taxation. Such withholding may not be required if Seller obtains and provides Buyer with an authorized exemption or waiver from withholding. If Seller does not provide Buyer with a certificate of exemption or waiver from HARPTA within fourteen (14) days of the Acceptance Date, Escrow is hereby authorized and instructed to withhold/collect from Seller the required amount at closing and forward it to the State Department of Taxation.

P-2 **Foreign Investment in Real Property Tax Act ("FIRPTA") Withholding Required if Seller is a Foreign Person.** Under the Internal Revenue Code, if Seller is a foreign person or entity (non-resident alien, corporation, partnership, LLC, trust, or estate), Buyer must generally withhold a specified percentage of the "amount realized" by Seller on the sale of the Property and forward this amount with the appropriate Internal Revenue Service ("IRS") form. Such withholding may not be required if Seller obtains and provides Buyer with an authorized exemption or waiver from withholding. If Seller does not provide Buyer with a certificate of exemption or waiver from FIRPTA within fourteen (14) days of the Acceptance Date, Escrow is hereby authorized and instructed to withhold/collect from Seller the required amount at closing and forward it to the IRS.

P-3 **Additional Disclosures Required by Foreign Buyers and Sellers.** Buyer and Seller understand that under statutes and ordinances such as the Agricultural Foreign Investment Disclosure Act of 1978, the International Investment and Trade in Services Survey Act, and the revised Ordinances of the City and County of Honolulu, among others, disclosures are required by foreign Buyers and/or Sellers under certain conditions.

## SECTION Q: SPECIAL TERMS

SPECIAL TERMS (Please number Q-1, Q-2, Q-3, and so forth)

Q-1 Buyer agree to pay in cash up to $2,500 above appraisal in the event appraisal is short of agreed sales price.

X _____ 6/27/2013                                    _____ 6/28/2013
BUYER'S INITIALS & DATE                                           SELLER'S INITIALS & DATE

©Hawaii Association of REALTORS®          Page 11 of 13          RR201  Rev. 3/12 (NC)  For Release 5/13

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

Nitta Kaopua L

DocuSign Envelope ID: 50677BBC-06AC-4E97-AAAD-7BFF0D1288C3

_____
_____
_____
_____
_____
_____
_____
_____

## SECTION R: BROKERAGE FIRMS SERVICES AND DISCLAIMERS

R-1 **Scope of Services and Disclaimer by Brokerage Firms.** Brokerage Firms assisting in this transaction, including their owners, licensees, salespersons, agents, and employees, recommend that Buyer and Seller each consult their own attorney, accountant, appraiser, architect, pest control expert, home inspector, insurance advisor, contractor, land surveyor, electrical engineer, civil engineer, structural engineer, soils engineer, land use professional, zoning expert, environmental expert, designer, estate planner, title insurer, other professionals, and/or subject matter experts should they have any questions within those fields about this transaction.

Buyer and Seller understand that Brokerage Firms have not made any representations or warranties, and have not rendered any opinions about: (a) the legal or tax consequences of this transaction; (b) the legality, validity, correctness, status, existence, or lack of any building permits which may have been required for the Property; (c) the land area of the Property, the location of the boundaries, or the size of any improvements on the Property; or (d) any of the matters set forth in Paragraph I-8, General Disclosures.

**Buyer and Seller understand and acknowledge the parties are not relying upon Brokerage Firms for any of the foregoing services or advice.**

R-2 **Rental Property.** Buyer understands that Seller and Brokerage Firms are not offering to sell or selling the Property together with any existing or future rental pool or other rental arrangement. Seller and the Brokerage Firms make no representations or guarantees about future rents. Buyer understands that should Buyer rent the Property after closing, Buyer is assuming all risks relative to all of the foregoing. This sale includes real property only, and the intent is not to convey a security or investment security as defined by the U.S. Securities and Exchange Commission or other governmental agency.

R-3 **Future Resale Value.** Seller and Brokerage Firms make no representations or guarantees about future resale values.

R-4 **Obligations.** Brokerage Firms shall not be held liable to either Buyer or Seller for the failure of either Buyer or Seller to perform their obligations under this Purchase Contract.

R-5 **Permission.** The parties grant Brokerage Firms permission to supply data to the Multiple Listing Service regarding the sales price, terms, and listing status of this transaction for use by other brokers and real estate professionals in making market studies, providing service to the public, and advising their clients.

R-6 **Disclosure of Real Estate Licensing Status.** Hawaii law provides that the licensee shall not acquire, rent, lease, sell, or exchange an interest in or buy, rent, lease, sell, or exchange for one's self, any member of the licensee's immediate family or Brokerage Firm, or any entity in which the licensee has any ownership interest, property listed with the licensee, licensee's Brokerage Firm, or listed with any other Brokerage Firm or licensee without making the true position known in writing.

[ na ] (a) **Disclosure.** The licensee(s) in this transaction disclose the following: _____
_____

## SECTION S: GENERAL PROVISIONS

S-1 **Acceptance Date.** As used in this Purchase Contract, the term "Acceptance Date" means the date on which this Purchase Contract becomes binding upon the parties.

S-2 **Dates and Times.** As used in this Purchase Contract, the term "day" means a calendar day, and all dates and times are based on Hawaii Standard Time (UTC-10). Unless otherwise specified in writing in this Purchase Contract, contingencies and all other dates in this Purchase Contract shall expire at 11:59 PM HST on the day stated.
Note: Hawaii does not observe Daylight Savings Time.

S-3 **Time is of the Essence.** Except as otherwise provided in this Purchase Contract, time is of the essence in the performance by all parties of their respective obligations under this Purchase Contract.

S-4 **Electronic (Digital or Fax) Signatures.** Electronically executed copies of this Purchase Contract and any related documents shall be fully binding and effective for all purposes, whether or not originally executed documents are transmitted to Escrow. Electronic signatures on documents will be treated the same as original signatures; however, each party agrees to promptly forward original executed documents (if any) to Escrow. The parties understand that conveyance, mortgage and other recordable documents must be executed, acknowledged, and delivered in original form and will not be acceptable if signed only electronically.

S-5 **Counterparts.** This Purchase Contract and any addenda, amendments, and related documents may be executed in any number of counterparts and by different parties in separate counterparts, each of which when so signed shall be deemed to be an original, and all of which taken together shall constitute one and the same document, which shall be binding upon all of the parties, notwithstanding that all of the parties do not sign the original or the same counterpart.

| | |
|---|---|
| X _~signature~_ 6/27/2013 | _~signature~_ 6/28/2013 |
| **BUYER'S INITIALS & DATE** | **SELLER'S INITIALS & DATE** |

©Hawaii Association of REALTORS®  
Page 12 of 13  
RR201  Rev. 3/12 (NC)  For Release 5/13

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

Nitta Kaopua L.

U.S. Bankruptcy Court - Hawaii  #13-00566  Dkt # 31  Filed  07/29/13  Page 20 of 23

**S-6** **Complete Agreement.** This Purchase Contract constitutes the entire agreement between Buyer and Seller and supersedes and cancels any and all prior negotiations, representations, warranties, understandings or agreements (both written and oral) of Buyer and Seller. No variation or amendment of this Purchase Contract shall be valid or enforceable unless it is in writing signed by both Buyer and Seller. All agreements and representations about the Property must be set forth in writing, and the parties agree that to be effective, any representation or warranty made by a Brokerage Firm or any party to this Purchase Contract must be set forth in writing in this Purchase Contract, or an amendment to this Purchase Contract, or in any required Disclosure Statement. Buyer and Seller shall each hold harmless and release the Brokerage Firms from any claims based upon any alleged representation which is not set forth in writing as stated in this paragraph.

**Buyer agrees to buy the Property at the price and terms offered in this Purchase Contract and acknowledges receipt of a copy of this Purchase Contract.**

Date _____6/27/2013_____ , _____ AM[ ] PM [ ]

Buyer's Name Benjamin Kai Miyasato Nitta

Signature X [signature]

Title _____

Agent's Name: Joleen Dias

Bus 808-441-5721     Fax 808-671-2260     Cell 808-306-9115     E-mail joleen@isremail.com

Buyer's Name Jennifer Hisako Kim Nitta

Signature X [signature]

Title _____

Brokerage Firm Island Style Realty Inc

## SECTION T: ACCEPTANCE OR COUNTER OFFER

*(Choose Paragraph T-1 OR Paragraph T-2)*

[  ] T-1   **Acceptance of Purchase Contract.** Seller accepts this Purchase Contract, agrees to sell the Property at the price and terms offered in this Purchase Contract, and acknowledges receipt of a copy of this Purchase Contract.

[X] T-2   **Counter Offer.** Seller agrees to sell the Property at the price and terms offered in this Purchase Contract, as amended by the attached Counter Offer, and acknowledges receipt of a copy of this Purchase Contract and the Counter Offer.

**IN EITHER EVENT:**

T-3   **Agreement to Pay Commission to Brokerage Firm.** Seller acknowledges and reaffirms Seller's agreement to pay to

KU Realty ("Brokerage

Firm") a commission for the sale of the Property in the amount of per listing agreement or court approval per the terms of the Listing Contract, or if there is no Listing Contract, then per other agreement between Seller and Brokerage Firm. Seller instructs Escrow to pay the commission directly to Brokerage Firm at closing in U.S. Dollars. These instructions cannot be changed without the written agreement of Brokerage Firm and Seller. Seller consents to Brokerage Firm sharing the commission with other Brokerage Firm(s) which may have provided services for this transaction.

Date 6/28/2013 , _____ AM[ ] PM [ ]

Seller's Name DAVE FIELD, TRUSTEE

Signature Dave Field, Trustee

Title _____

Agent's Name: Keahi D Pelavo

Bus 808-398-3220     Fax _____     Cell _____

Seller's Name _____

Signature _____

Title _____

Brokerage Firm KU Realty

E-mail _____

Seller is a Foreign Person [  ]  Non-Hawaii Resident [  ]  Owner/Occupant [  ]  Other [  ] _____

**NOTE: THERE IS NO WARRANTY ON PLAIN LANGUAGE.** An effort has been made to put this agreement into plain language. But there is no promise that it is in plain language. In legal terms, THERE IS NO WARRANTY, EXPRESSED OR IMPLIED, THAT THIS AGREEMENT COMPLIES WITH CHAPTER 487A OF THE HAWAII REVISED STATUTES, AS AMENDED. This means that the Hawaii Association of REALTORS® is not liable to any Buyer, Seller, or other person who uses this form for any damages or penalty because of any violation of Chapter 487A. People are cautioned to see their own attorneys about Chapter 487A (and other laws that may apply).

X [signature] 6/27/2013
**BUYER'S INITIALS & DATE**

©Hawaii Association of REALTORS®

Page 13 of 13

[initials] 6/28/2013
**SELLER'S INITIALS & DATE**

RR201  Rev. 3/12 (NC)  For Release 5/13

Produced with zipForm® by zipLogix  18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com     Nitta Kaopua L

DocuSign Envelope ID: 50677BBC-06AC-4E97-AAAD-7BFF0D1288C3



# "AS IS" CONDITION ADDENDUM
## Hawaii Association of REALTORS® Standard Form
### Revised 1/12 (NC)  For Release 5/13



COPYRIGHT AND TRADEMARK NOTICE: This copyrighted Hawaii Association of REALTORS® Standard Form is licensed for use by the entire real estate industry on condition that there shall be no alteration of the printed portions, pagination, or paragraph numbers or breaks. The use of this form is not intended to identify the real estate licensee as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by real estate licensees who are members of the National Association of REALTORS® and who subscribe to its Code of Ethics.

"AS IS" CONDITION ADDENDUM is made a part of Purchase Contract:

Reference Date: __June 26, 2013__

Property Reference or Address: __95-226 Kaopua Lp, Mililani, HI  96789__

Tax Map Key: Div. ___1___ /Zone ___9___ /Sec. ___5___ /Plat ___022___ /Parcel ___091___ /CPR ___0000___ (if applicable).

1. **Purpose of this "AS IS" Condition Addendum ("Addendum").** Buyer understands and agrees that this Addendum is a material factor in Seller's acceptance of the Purchase Price for the Property and that Seller would not have been willing to sell the Property to Buyer unless Buyer accepted the terms of this Addendum.

2. **Sale in "AS IS" Condition.** Seller will sell and transfer the Property at closing in "AS IS" condition. The term "Property" includes all land and improvements (including but not limited to the roof, walls, foundations, soils, plumbing, electrical and mechanical systems, etc.), real property, and personal property (if any). Except as may be otherwise expressly provided in the Purchase Contract, and Seller's disclosures, Seller is not obligated to make any repairs or upgrades to the Property and will transfer the Property without any representations or warranties, either expressed or implied. By way of illustration (and not limitation), Seller makes no representations or warranties that the Property: (a) conforms to current (or past) building codes; (b) has all required building permits; or (c) complies with the laws, rules, ordinances or regulations of any government, association, or other body. Seller shall not be responsible for any latent defects, hidden defects, or defects which time may reveal.

3. **Seller's Continuing Responsibilities.** Seller remains obligated to disclose material facts in writing to Buyer, as such obligation is set forth in Paragraphs I-1 and I-2 of the Purchase Contract. In addition, this Addendum does not eliminate any of Seller's responsibilities or obligations as may have been agreed to in the Purchase Contract.

4. **Buyer's Rights and Responsibilities.** Buyer is strongly advised to inspect, within the time frames stated in the Purchase Contract, the Property and all public and association records relating to the Property. Such inspections should be made personally and by qualified experts (such as a professional home inspector) selected by Buyer. Buyer accepts the responsibility for making reasonable inquiry regarding Buyer's concerns about the Property, including the Property's physical condition and whether the Property is suitable for any use or purpose which Buyer may intend. Buyer acknowledges that there may be material facts of which Seller is not aware which qualified experts may be able to discover. Buyer also acknowledges that even thorough inspections by qualified experts might not reveal all defects in the Property, and that there may be latent defects, hidden defects, or defects which time may reveal.

5. **Buyer's Acceptance of Property in "AS IS" Condition.** Subject to Buyer being furnished with Seller's disclosures and having the opportunity to inspect the Property, as provided for in the Purchase Contract, and with knowledge and acceptance of all the disclosures, disclaimers, conditions, and agreements contained in the Purchase Contract and in this Addendum, Buyer understands and agrees that, except as may be expressly otherwise provided in the Purchase Contract, and Seller's disclosures, the Property will be sold and transferred at closing in "AS IS" CONDITION, WITHOUT ANY REPRESENTATIONS OR WARRANTIES, EXPRESSED OR IMPLIED.

6. **Buyer's Release and Waiver.** Buyer agrees to give up, waive and relinquish all rights to assert any claim, demand, proceeding, or lawsuit of any kind against Seller and/or Brokerage Firms (and their licensees) involved in this transaction with respect to the condition or use of the Property, except for claims which are based upon Seller's and/or Brokerage Firms' (and their licensees') failure to disclose material facts.

7. **Survival.** The terms and conditions of this Addendum will survive the closing and will not merge with the provisions of any closing documents.

8. **Special Terms:** _____

BUYER AND SELLER ARE ADVISED TO CONSULT WITH AN ATTORNEY REGARDING THIS ADDENDUM. BUYER AND SELLER UNDERSTAND AND AGREE TO THE TERMS CONTAINED IN THIS "AS IS" CONDITION ADDENDUM.

| | | |
|---|---|---|
| X _DocuSigned by:_ __Brate__   6/27/2013 | X _DocuSigned by:_ __Dane Field, Trustee__   6/28/2013 | |
| **Buyer** ___Date___ | **Seller** ___Date___ | |
| Benjamin Kai Miyasato Nitta | DANE FIELD, TRUSTEE | |
| X _DocuSigned by:_ __Jennifer Hisako Kim Nitta__   6/27/2013 | X | |
| **Buyer** ___Date___ | **Seller** ___Date___ | |
| Jennifer Hisako Kim Nitta | | |

NOTE: THERE IS NO WARRANTY ON PLAIN LANGUAGE. An effort has been made to put this agreement into plain language. But there is no promise that it is in plain language. In legal terms, THERE IS NO WARRANTY, EXPRESSED OR IMPLIED, THAT THIS AGREEMENT COMPLIES WITH CHAPTER 487A OF THE HAWAII REVISED STATUTES, AS AMENDED. This means that the Hawaii Association of REALTORS® is not liable to any Buyer, Seller, or other person who uses this form for any damages or penalty because of any violation of Chapter 487A. People are cautioned to see their own attorneys about Chapter 487A (and other laws that may apply).

©Hawaii Association of REALTORS®
"AS IS" Condition Addendum
RR213  Rev. 1/12



Island Style Realty 94-539 Puahi St B Waipahu, HI 96797
Phone: 808-671-2225          Fax: 808-671-2260          Joleen Dias          Nitta Kaopua L

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

DocuSign Envelope ID: 50677BBC-06AC-4E97-AAAD-7BFF0D1288C3

**This disclosure form is from the National Lead Information Center under the United States Environmental Protection Agency. This is NOT a Hawaii Association of REALTORS® Standard Form.**

### Disclosure of Information on Lead-Based Paint and/or Lead-Based Paint Hazards

**Lead Warning Statement**

*Every purchaser of any interest in residential real property on which a residential dwelling was built prior to 1978 is notified that such property may present exposure to lead from lead-based paint that may place young children at risk of developing lead poisoning. Lead poisoning in young children may produce permanent neurological damage, including learning disabilities, reduced intelligence quotient, behavioral problems, and impaired memory. Lead poisoning also poses a particular risk to pregnant women. The seller of any interest in residential real property is required to provide the buyer with any information on lead-based paint hazards from risk assessments or inspections in the seller's possession and notify the buyer of any known lead-based paint hazards. A risk assessment or inspection for possible lead-based paint hazards is recommended prior to purchase.*

**Seller's Disclosure**

(a) Presence of lead-based paint and/or lead-based paint hazards (check (i) or (ii) below):

    (i)_____ Known lead-based paint and/or lead-based paint hazards are present in the housing (explain).

    (ii)_____ Seller has no knowledge of lead-based paint and/or lead-based paint hazards in the housing.

(b) Records and reports available to the seller (check (i) or (ii) below):

    (i)_____ Seller has provided the purchaser with all available records and reports pertaining to lead-based paint and/or lead-based paint hazards in the housing (list documents below).

    (ii)_____ Seller has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the housing.

**Purchaser's Acknowledgment (initial)**

(c)_____ Purchaser has received copies of all information listed above.

(d)_____ Purchaser has received the pamphlet *Protect Your Family From Lead in Your Home.*

(e) Purchaser has (check (i) or (ii) below):

    (i)_____ received a 10-day opportunity (or mutually agreed upon period) to conduct a risk assessment or inspection for the presence of lead-based paint or lead-based paint hazards; or

    (ii)_____ waived the opportunity to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards.

**Agent's Acknowledgment (initial)**

(f)_____ Agent has informed the seller of the seller's obligations under 42 U.S.C. 4852 d and is aware of his/her responsibility to ensure compliance.

**Certification of Accuracy**

The following parties have reviewed the information above and certify, to the best of their knowledge, that the information they have provided is true and accurate.

| | | | |
|---|---|---|---|
| *Dane Field, Trustee* | 6/28/2013 | | |
| Seller | Date | *Jennifer Hisako Kim Nitta* 6/28/2013 | |
| | | Seller | Date |
| Purchaser | 6/29/2013 Date | *Joleen Dias* 6/28/2013 | |
| | | Purchaser | Date |
| Agent | Date | Agent | Date |

| Company: **KU Realty, LLC** | S/N: | **205488** |
|---|---|---|
| Provided by: **Keahi D. Pelayo** | | Printed using Software from Professional Computer Forms Co  v 04/04 |